UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARTA LIDIA PORTILLO CASERES,<br>Plaintiff,<br><br>v.<br><br>SUSAN DIBBINS, Chief, Administrative Appeals Office of U.S. Citizenship and Immigration Services;<br>JOSEPH B. EDLOW, Director, U.S. Citizenship and Immigration Services;<br>KRISTI L. NOEM, Secretary, U.S. Department of Homeland Security,<br>Defendants. | Civil Action No. 1:25-cv-13563-BEM |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND CONSOLIDATED STATEMENT OF FACTS PURSUANT TO THE COURT'S STANDING ORDER REGARDING SUMMARY JUDGMENT MOTION PRACTICE**

**PRELIMINARY NOTE**. This action is a challenge under the Administrative Procedure Act to a final decision of the Administrative Appeals Office ("AAO"), and judicial review is confined to the certified administrative record. *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The facts set forth below are drawn exclusively from that record. Citations in the form "GOV______" are to the pagination of the certified administrative record filed by Defendants on June 5, 2026. Doc. 13.

Plaintiff filed her motion for summary judgment on August 4, 2026. Doc. 14. The Court entered its Standing Order Regarding Summary Judgment Motion Practice sixteen days later, on August 20, 2026. Doc. 15. Plaintiff submits this statement, and serves a Word version of it on Defendants, in order to comply with that order notwithstanding that it postdates her motion. Because judicial review in this action is confined to the certified administrative record already filed by Defendants, Plaintiff is aware of no supporting materials within the meaning of paragraph 1 of the Standing

Order that are not already in Defendants' possession; if Defendants believe otherwise, Plaintiff will promptly serve them.

Defendants have advised that they intend to cross-move for summary judgment. Plaintiff therefore offers this document as the single statement of facts addressing both motions contemplated by paragraph 3 of the Standing Order. Consistent with paragraph 1, Defendants' responses should be entered in this same document following each numbered paragraph, with citations to the pages of the certified administrative record supporting any dispute, and any material facts that Defendants separately contend are disputed should be added in the section provided at the end, continuing the numbering.

**I. THE PARTIES AND PLAINTIFF'S EMPLOYMENT**

1. Plaintiff Marta Lidia Portillo Caseres is a native and citizen of Guatemala who has resided in Waltham, Massachusetts. GOV000505.

   **DEFENDANTS' RESPONSE:** Undisputed. GOV000534.

2. Plaintiff was employed at a Market Basket supermarket from approximately February 2018 through June 2022. GOV000505.

   **DEFENDANTS' RESPONSE:** Undisputed. GOV000316.

3. Throughout that employment Plaintiff was supervised by the individual identified in the AAO's decision as "O-." GOV000505; GOV000011.

   **DEFENDANTS' RESPONSE:** Undisputed.

4. O- was aware from the outset of Plaintiff's employment that she was not authorized to work in the United States. GOV000505.

   **DEFENDANTS' RESPONSE:** Undisputed. GOV000316.

## II. THE AGENCY PROCEEDINGS AND THE CERTIFIED ADMINISTRATIVE RECORD

5. On April 10, 2023, Plaintiff filed Form I-914, Application for T Nonimmigrant Status, asserting that she was the victim of a severe form of labor trafficking. GOV000290.

**DEFENDANTS' RESPONSE:** Undisputed that On April 10, 2023, Plaintiff, a citizen of Guatemala, filed an Application for T Nonimmigrant Status (Form I-914). Defendants state the application speaks for itself.

6. On May 20, 2024, USCIS issued a Request for Evidence. GOV000280.

**DEFENDANTS' RESPONSE:** Undisputed. GOV000486.

7. Plaintiff responded to the Request for Evidence on August 15, 2024. GOV000280.

**DEFENDANTS' RESPONSE:** Undisputed. GOV000489–534.

8. On November 5, 2024, USCIS denied Plaintiff's Form I-914, concluding that the record did not establish that she was the victim of a severe form of trafficking in persons. GOV000280.

**DEFENDANTS' RESPONSE:** Undisputed. GOV000022–23, 486–87. Defendants further state the decision speaks for itself.

9. On December 4, 2024, Plaintiff filed Form I-290B, Notice of Appeal or Motion, appealing the denial to the AAO. GOV000015; GOV000030.

**DEFENDANTS' RESPONSE:** Undisputed. GOV000015–21.

10. On December 18, 2024, Plaintiff filed a supplemental brief and additional evidence with the AAO. GOV000035.

**DEFENDANTS' RESPONSE:** Undisputed.

11. On September 8, 2025, the AAO issued the decision dismissing Plaintiff's appeal. That decision is the final agency action challenged in this case. GOV000009–GOV000014.

**DEFENDANTS' RESPONSE:** Undisputed.

12. On June 5, 2026, Defendants filed the certified administrative record, paginated GOV000001 through GOV000550, under seal pursuant to this Court's order granting Defendants' assented-to motion to seal. Doc. 11 (Electronic Order, June 5, 2026); Doc. 12 (Notice of Filing Certified Administrative Record); Doc. 13 (Certified Administrative Record).

**DEFENDANTS' RESPONSE:** Undisputed.

13. No party filed a motion to supplement or to complete the certified administrative record by the July 6, 2026 deadline set by this Court. Doc. 9.

**DEFENDANTS' RESPONSE:** Undisputed.

## III. THE DEFINITION OF "INVOLUNTARY SERVITUDE" QUOTED IN THE AAO'S DECISION

14. The AAO's decision quotes the definition of "involuntary servitude" set forth at 8 C.F.R. § 214.201. GOV000012–GOV000013.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state the decision speaks for itself.

15. The definition quoted in the AAO's decision includes "a condition of servitude induced by means of any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint." GOV000012–GOV000013.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state the decision speaks for itself.

16. The definition quoted in the AAO's decision includes "a condition of servitude induced by the abuse or threatened abuse of legal process." GOV000012–GOV000013.

**DEFENDANTS' RESPONSE:** Disputed. GOV000012–13. The AAO's decision referencing the term "involuntary servitude," as written, "includes a condition of servitude in which the victim is forced to work for the trafficker by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through the law or legal process. This definition encompasses those cases in which the trafficker holds the victim in servitude by placing the victim in fear of such physical restraint or injury or legal coercion." *Id*. Defendants further state the decision speaks for itself.

17. The definition quoted in the AAO's decision includes a condition of servitude in which the victim is forced to work "by the use or threat of coercion through the law or the legal process." GOV000012–GOV000013.

**DEFENDANTS' RESPONSE:** Disputed. GOV000012–13. The AAO's decision referencing the term "involuntary servitude," as written, "includes a condition of servitude in which the victim is forced to work for the trafficker by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through the law or legal process. This definition encompasses those cases in which the trafficker holds the victim in servitude by placing the victim in fear of such physical restraint or injury or legal coercion." *Id*. Defendants further state the decision speaks for itself.

18. After quoting that definition, the AAO's decision states that "[s]ervitude is not defined in the Act or the regulation." GOV000013.

**DEFENDANTS' RESPONSE:** Disputed, in part. GOV000012–13. As written, "Servitude is not defined in the Act or the regulation but is commonly understood as 'the condition of being a servant or slave,' or a prisoner sentenced to forced labor, . . . or 'the state of being under the control of someone else and of having no freedom; the condition of a slave." *Id.* (citations omitted). Defendants further state the decision speaks for itself.

19. The AAO's decision then sets out definitions of "servitude" drawn from *Black's Law Dictionary* and the *Cambridge Dictionary*: "the condition of being a servant or slave," "a prisoner sentenced to forced labor," and "the state of being under the control of someone else and of having no freedom; the condition of a slave." GOV000013.

**DEFENDANTS' RESPONSE:** Disputed, in part. GOV000012–13. As written, "Servitude is not defined in the Act or the regulation but is commonly understood as 'the condition of being a servant or slave,' or a prisoner sentenced to forced labor, . . . or 'the state of being under the control of someone else and of having no freedom; the condition of a slave." *Id.* (citations omitted). Defendants further state the decision speaks for itself.

## IV. THE FACTS RECOUNTED IN THE AAO'S DECISION

20. The AAO's decision states: "On at least two occasions, O- told [Plaintiff], 'If you don't do what I tell you, I'll call ICE to get you deported. You don't have any rights because you're an illegal.'" GOV000011; GOV000505 (Portillo Caseres Decl. ¶¶ 12–14).

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

21. The AAO's decision states that after one such incident Plaintiff fainted because of the stress. GOV000011.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

22. The AAO's decision recounts that in February 2021 Plaintiff suffered a shoulder injury, and that her physician issued a letter stating that she could not return to work for at least two months. GOV000011; GOV000259 (hospital record, admission 2/27/2021).

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

23. The AAO's decision recounts that O- told Plaintiff she could take only fifteen days of unpaid leave following that injury, and that she returned to work at the end of that period because she had no money. GOV000011.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

24. The AAO's decision recounts that Plaintiff was later recommended for shoulder surgery, and that the Massachusetts Department of Industrial Accidents ordered her employer's insurer to pay compensation and the cost of the surgery. GOV000012; GOV000264–GOV000266 (Department of Industrial Accidents orders).

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

25. The AAO's decision recounts that when Plaintiff cut her hand at work, O- told her she could not tell anyone that the injury occurred at work and instructed her to say that it happened at home, and that when she protested he told her, "That's what you say or else." GOV000011.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

26. The AAO's decision recounts that O- threatened to fire Plaintiff and to cut her hours, and that he yelled at her and called her stupid, when she refused to work overtime or complained about her treatment. GOV000011.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

27. The AAO's decision recounts that O- told Plaintiff that he would give her a bad reference, and that Market Basket was the only employer "who hire[s] illegals," if she ever quit. GOV000012.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

28. The AAO's decision recounts that in March 2023 Plaintiff was admitted to a psychiatric unit because she was severely depressed and suicidal, and that her condition was worsened by reliving her trafficking experiences. GOV000012; GOV000270 (Portillo Caseres Third Decl. ¶ 5).

**DEFENDANTS' RESPONSE:** Undisputed, in part. GOV000012. Plaintiff explained her shoulder pain was intense and reliving her trafficking experiences to complete her application worsened her depression. *Id*. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

## V. THE AAO'S CREDIBILITY AND CORROBORATION FINDINGS

29. The AAO found that Plaintiff "credibly recounted" the circumstances of her employment. GOV000012–GOV000013.

**DEFENDANTS' RESPONSE:** Disputed, in part. GOV000012. The AAO found Plaintiff "credibly recounted how she was paid for all of her working time after she complained and how she eventually received benefits after she became a full-time employee." *Id*. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

30. The AAO found that Plaintiff's records "corroborate" her account. GOV000012–GOV000013.

**DEFENDANTS' RESPONSE:** Disputed, in part. GOV000012. The AAO found that the medical records Plaintiff submitted "corroborate her account of her shoulder injury and psychiatric hospitalization." *Id*. Documents from the Massachusetts Department of Industrial Accidents state Plaintiff "was initially injured in February 2021 and was out of work for approximately three months before returning to work until May 2022 when she suffered increased pain and was recommended for surgery." *Id*. Defendants further state

this portion of the decision summarizes the declarations Plaintiff submitted in support of her application. Defendants state the decision speaks for itself.

31. The AAO's decision contains no adverse credibility finding as to Plaintiff. GOV000009–GOV000014.

**DEFENDANTS' RESPONSE:** Disputed. The AAO found Plaintiff "provides a different account of how she left her job." GOV000011. The AAO also found the record "does not support [Plaintiff's] claim" that "O- recruited, obtained, and harbored her through coercion and fraud to subject her to involuntary servitude" because "she was never placed in a condition of servitude." GOV000012. "[T]he record also indicates that [Plaintiff] was not forced to work against her will." GOV000013. Defendants state the decision speaks for itself.

## VI. THE AAO'S CONCLUSION AND RESERVATION OF THE REMAINING ELEMENTS

32. The AAO concluded that the record did not establish that O- "ever placed or intended to place the Applicant in a condition of servitude." GOV000013.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state the decision speaks for itself.

33. In support of that conclusion, the AAO's decision states that "[t]he Applicant was paid, received benefits, and eventually quit her job and received workers' compensation." GOV000013.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state the decision speaks for itself.

34. The AAO's decision acknowledges O-'s mistreatment of Plaintiff and states that it "does not establish that he ever intended to place or actually placed her in a condition of servitude." GOV000013.

**DEFENDANTS' RESPONSE:** Undisputed. Defendants further state the decision speaks for itself.

35. The AAO's decision states that Plaintiff "was not forced to work against her will" because she "continued to work because she wanted the benefits and needed to support her daughter," and because she "eventually quit." GOV000013.

**DEFENDANTS' RESPONSE:** Disputed, in part. In reaching its conclusion the AAO found, in part, that Plaintiff explained "she continued to work because she wanted the benefits and needed to support her daughter. In her declaration submitted in response to the RFE, [Plaintiff] also recounts how she eventually quit her job." GOV000013. Defendants further state the decision speaks for itself.

36. The AAO's decision states that Plaintiff "got fed up" and quit. GOV000013.

**DEFENDANTS' RESPONSE:** Disputed, in part. Defendants further state this portion of the decision summarizes the declarations Plaintiff submitted in support of her application where she recounts "she worked at Market Basket for a year after hurting her shoulder, but eventually 'got fed up with everything and quit'". GOV000012. Defendants further state the decision speaks for itself.

37. Having concluded that Plaintiff was not the victim of a severe form of trafficking in persons, the AAO expressly reserved determination of whether Plaintiff is physically present in the United States on account of trafficking and whether she complied with

reasonable requests for assistance from law enforcement. GOV000013 (citing *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976)).

**DEFENDANTS' RESPONSE:** Disputed, in part. The AAO decided that Plaintiff "has not established that she is a victim of a severe form of trafficking in persons and [because] this issue is dispositive of her appeal, we do not reach and hereby reserve determination of whether she is physically present in the United States on account of the trafficking and whether she complied with any reasonable request for assistance in the investigation or prosecution of trafficking." GOV000013. Defendants further state the decision speaks for itself.

38. The AAO has not adjudicated the physical presence element of Plaintiff's application for T nonimmigrant status. GOV000013.

**DEFENDANTS' RESPONSE:** Undisputed, in part. The AAO did not reach and reserved determination of this element because Plaintiff's failure to establish that she is a victim of a severe form of trafficking in persons was dispositive of her appeal. GOV000013. Defendants further state the decision speaks for itself.

39. The AAO has not adjudicated the law enforcement compliance element of Plaintiff's application for T nonimmigrant status. GOV000013.

**DEFENDANTS' RESPONSE:** Undisputed, in part. The AAO did not reach and reserved determination of this element because Plaintiff's failure to establish that she is a victim of a severe form of trafficking in persons was dispositive of her appeal. GOV000013. Defendants further state the decision speaks for itself.

**<u>DEFENDANTS' SEPARATELY IDENTIFIED DISPUTED MATERIAL FACTS</u>**

Pursuant to paragraph 1 of the Standing Order, any material facts that Defendants separately contend are disputed should be set forth below, paragraph by paragraph, with citations to the pages of the certified administrative record. The numbering continues from the preceding section rather than restarting at one. Plaintiff will respond to each such paragraph in this same document when she files her opposition and reply.

40. Plaintiff entered the United States in November 2016 on a B-2 visa. GOV000291, 334.

**PLAINTIFF'S RESPONSE:**

41. Plaintiff did not depart the United States after her visa expired. GOV000291, 315–316.

**PLAINTIFF'S RESPONSE:**

42. Plaintiff told her employer that she was undocumented and, despite her immigration status, she was hired. GOV000016.

**PLAINTIFF'S RESPONSE:**

43. Initially, Plaintiff worked part-time and was informed by her employer that once she decided to become a full-time employee, she would be required to sign a contract, receive benefits (including vacation and sick time), have a one-hour lunch break and a 30-minute break, receive a bonus every three months, and receive a raise in her hourly rate. GOV000316–317.

**PLAINTIFF'S RESPONSE:**

44. Plaintiff was paid each week, and on time, but approximately seven months into her employment, hours were missing from her pay. GOV000317. When she discovered she was not being paid the correct amount for the hours that she worked, she complained and was eventually paid what she was owed. *Id.* As a part-time worker, she was denied vacations and did not receive a holiday bonus. *Id.*

**PLAINTIFF'S RESPONSE:**

45. After two years of employment with Market Basket, Plaintiff began working full-time. GOV000316.

**PLAINTIFF'S RESPONSE:**

46. After approximately 9 months, Plaintiff did not receive the benefits she was promised as a full-time employee. GOV000317. As a result, she threatened to quit. *Id.* The manager asked her to stay, Plaintiff said she would stay if she received benefits, and approximately 20 days later her employer granted her benefits. *Id.*

**PLAINTIFF'S RESPONSE:**

47. After one year of working under contract, Plaintiff was given one week of vacation time and bonuses. GOV000317–18.

**PLAINTIFF'S RESPONSE:**

48. Plaintiff was provided leave for medical appointments, but was not paid for sick time, and then given fewer work hours and heavier work. GOV000318–19. She was yelled at, made to feel uncomfortable, denied bathroom breaks, and felt like she could not complain about work conditions, unfair treatment, or discrimination in the workplace, and was afraid her employer would call the police if she did not do what was asked of her at work. GOV000317–19. When Plaintiff worked overtime and holidays she was paid her regular rate. *Id.* After Plaintiff was injured several times at work, she was threatened and told to say that the injury happened at home. *Id.*

**PLAINTIFF'S RESPONSE:**

49. In February 2021, Plaintiff injured her shoulder while lifting heavy objects. GOV000320. Plaintiff told her employer she needed to go to the hospital, and after laughing at her, the "boss" told her to stay or "else [she] would not find a job ever again." *Id.*

**PLAINTIFF'S RESPONSE:**

50. Plaintiff went to the emergency room the next day and was given a letter stating she could not return to work for two months. GOV000320. Her "boss was furious," the employer refused to pay for medical leave, then eventually granted Plaintiff 15 days of paid leave. *Id*.

**PLAINTIFF'S RESPONSE:**

51. At Plaintiff's next doctor's appointment, she was given a letter stating that she could not lift more than 10-15 pounds. *Id*. Plaintiff's employer told her to go home and that she was fired. *Id.*

**PLAINTIFF'S RESPONSE:**

52. Plaintiff hired a lawyer and won a worker's compensation settlement. GOV000321.

**PLAINTIFF'S RESPONSE:**

53. After USCIS issued a Request for Evidence ("RFE") on Plaintiff's application, Plaintiff submitted a supplemental declaration. GOV000504. In support of her evidence that she was a victim of a severe form of trafficking, Plaintiff described how her employer demanded that she work as many hours as he wanted her to, and threatened that, "If you don't want to do your job, I will let you go. Don't waste my time." *Id.*

**PLAINTIFF'S RESPONSE:**

54. On at least two occasions her employer threatened to call U.S. Immigrations and Customs Enforcement ("ICE). GOV000505 ("If you don't do what I tell you, I'll call ICE and get you deported."; and "You don't have any rights because you're an illegal.").

**PLAINTIFF'S RESPONSE:**

55. Plaintiff explained that, despite the threats and mistreatment, she stayed at the job because she felt she had no choice and her employer promised she "would get an easier line of work." GOV000505 ("I kept telling myself that if I just put up with things a little longer, things would get much better and it would all be worth it.").

**PLAINTIFF'S RESPONSE:**

56. Plaintiff thought she would be unable to find another job because on three previous occasions her employer stated that if she ever left, he would give her a bad reference. GOV000506.

**PLAINTIFF'S RESPONSE:**

57. Later, Plaintiff "finally got fed up with everything and quit." GOV000506. She was afraid of retaliation from her employer after she quit because her employer said she wouldn't find work anymore. *Id.*

**PLAINTIFF'S RESPONSE:**

58. During her administrative appeal of the denial of Plaintiff's application, she submitted a third declaration. GOV000269–70. In that declaration, she said that in March 2023, she was admitted to the psychiatric unit of a hospital because she was depressed and suicidal as a result of the pain from her shoulder injury, made worse by reliving her experience with her employer while completing her Form I-914 application. *Id.*

**PLAINTIFF'S RESPONSE:**

59. She began seeing a psychologist and psychiatrist and believes her mental state has improved. GOV000270.

**PLAINTIFF'S RESPONSE:**

60. Because of her work injuries, she filed two workers' compensation cases and, with the help of an attorney, secured two workers' compensation awards. GOV000270.

**PLAINTIFF'S RESPONSE:**

61. USCIS notified Plaintiff that it had reviewed her application and determined that Plaintiff had not submitted sufficient evidence to show she was a victim of a severe form of trafficking in persons. GOV000486–87.

**PLAINTIFF'S RESPONSE:**

62. USCIS explained that labor exploitation is defined as "a social relationship based on an imbalance in power between workers and employers," and that "the behaviors and mindset around labor exploitation are not defined by federal regulation as a form of human trafficking." GOV000487. Therefore, Plaintiff application lacked evidence of human trafficking, and USCIS requested additional evidence to "sufficiently establish" that Plaintiff was "a victim of a severe form of trafficking in persons." *Id.*

**PLAINTIFF'S RESPONSE:**

63. Additionally, to address any inadmissibility for public health concerns under INA § 212(a)(1)(A)(i), the RFE requested that Plaintiff submit a Form I-693, Report of Medical Examination and Vaccination Record. GOV000487.

**PLAINTIFF'S RESPONSE:**

64. On August 15, 2024, USCIS received Plaintiff's timely response to the RFE. GOV000489–534.

**PLAINTIFF'S RESPONSE:**

65. USCIS determined Plaintiff's evidence was insufficient to determine that she was "a victim of a severe form of trafficking in persons." GOV000024.

**PLAINTIFF'S RESPONSE:**

66. USCIS requested that Plaintiff submit third-party evidence of statements she made to USCIS, specific details of the threats she claimed, and additional evidence that Plaintiff was a victim of trafficking. GOV000024.

**PLAINTIFF'S RESPONSE:**

67. Plaintiff submitted an attorney letter, a personal statement, and public source documents. GOV000024. All of these were determined to be insufficient because (a) assertions of counsel is not evidence; (b) the public source documents constituted general details pertaining to trafficking, with no specific correlation to Plaintiff; and (c) Plaintiff failed to submit medical records demonstrating an on-the-job injury, the letter(s) stating she could not return to work, or evidence of the workers' compensation awards she received. *Id.*

**PLAINTIFF'S RESPONSE:**

68. USCIS determined that the record did not establish that Plaintiff was a victim of a severe form of trafficking in persons. GOV000024.

**PLAINTIFF'S RESPONSE:**

69. Plaintiff failed to demonstrate that her situation met the statutory and regulatory definitions of a victim of a severe form of trafficking, and therefore she did not establish that she was physically present in the United States because of such trafficking. GOV000025.

**PLAINTIFF'S RESPONSE:**

70. Plaintiff did not establish eligibility as a victim of trafficking, and therefore the record was insufficient to establish that she complied with any law enforcement requests for assistance in the investigation or prosecution of acts of severe forms of trafficking in persons. GOV000025.

**PLAINTIFF'S RESPONSE:**

71. USCIS's denial of Plaintiff's Form I-914 recounted and considered the evidence Plaintiff submitted in both the original application and response to the RFE, and ultimately concluded that the facts Plaintiff alleged were insufficient to establish her eligibility for T-1 nonimmigrant status. GOV000022–26.

**PLAINTIFF'S RESPONSE:**

72. For her administrative appeal, Plaintiff submitted the medical documentation and records originally found lacking by the VSC in USCIS's original denial. GOV000012. She argued on appeal that Plaintiff's employer "recruited, obtained, and harbored her through coercion and fraud to subject her to involuntary servitude." GOV000012–13.

**PLAINTIFF'S RESPONSE:**

73. Plaintiff received full payment for her work after she complained, she received benefits when she was working full-time, and she received workers' compensation for injuries she sustained on the job. GOV000013. Nor was Plaintiff forced to work against her will. *Id.*

**PLAINTIFF'S RESPONSE:**

74. Despite Plaintiff's mistreatment by her employer, the record failed to establish that her employer ever intended to place, or actually placed, her in a condition of servitude. *Id.* Thus, she could not establish that the employer "recruited, obtained, or harbored" Plaintiff

for the purposes of doing so, and was therefore ineligible for nonimmigrant classification in accordance with 8 U.S.C. § 1011(a)(15)(T); 8 C.F.R. § 214.201. *Id*. (case citations omitted).

**PLAINTIFF'S RESPONSE:**

75. In reaching its decision, the AAO considered Plaintiff's differing accounts of how she left her employment. GOV000011. Initially, Plaintiff stated that after injuring her shoulder at work and providing her employer with a letter that she could not lift more than 15 pounds, she was fired. *Id*. She hired a lawyer and won her worker's compensation case. *Id*.

**PLAINTIFF'S RESPONSE:**

76. In Plaintiff's supplemental declaration submitted in response to the RFE, Plaintiff stated that when she provided her employer with letters from her doctor, her employer ("O-") threw them in the trash, then later called her and threatened to reduce her to part-time if she did not return to work. GOV000011–12. Plaintiff returned to work because she did not want to lose her benefits, but was assigned the same work and eventually could not continue. GOV000012.

**PLAINTIFF'S RESPONSE:**

77. Plaintiff explained that she was afraid to leave because her employer previously told her if she ever quit and asked for a reference, he would give her a bad reference, and she would never find work because Market Basket was the only employer "who hires illegals." GOV000012. She remained at Market Basket for a year after her injury, but eventually "got fed up with everything and quit." *Id.*

**PLAINTIFF'S RESPONSE:**

78. There is no indication that she had any contact with her employer after quitting. GOV000012.

**PLAINTIFF'S RESPONSE:**

79. The AAO acknowledged that Plaintiff suffered mistreatment while working at Market Basket. GOV000013. However, she was paid, received benefits, eventually left her employment and received worker's compensation settlements, and as a result Plaintiff did not establish that her employer placed or intended to place her in a condition of servitude. *Id.*

**PLAINTIFF'S RESPONSE:**

80. Plaintiff has not demonstrated that she was a victim of a severe form of trafficking in persons. GOV000013.

**PLAINTIFF'S RESPONSE:**

Dated: August 30, 2026

Respectfully submitted,
MARTA LIDIA PORTILLO CASERES,
By her attorney,

Rachel L. Rado, Esq. | BBO # 682095
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor
Boston, MA 02114
(t) 617-871-6030 | (f) 877-246-8795
(e) rachel@rachelradolaw.com

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Eve A. Piemonte*
Eve A. Piemonte
Assistant United States Attorney
United States Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3369
Eve.Piemonte@usdoj.gov

Dated: October 1, 2026